IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHELLE BONNER, on behalf of
herself and all others similarly
situated,

                Plaintiffs,

v.

SFO SHUTTLE BUS COMPANY;
and DOES 1-20,

                Defendants.

No. C13-1606 TEH

ORDER GRANTING PLAINTIFFS'
MOTION FOR APPROVAL OF
*HOFFMANN-LA ROCHE* NOTICE

Plaintiffs' motion for approval of *Hoffmann-La Roche* notice was scheduled to come before the Court on October 28, 2013. As the Court was unavailable on that date and determined that the matter was appropriate for resolution without oral argument, the matter was taken under submission, pursuant to Civil Local Rule 7-1(b). Defendant subsequently requested argument and was instead given the opportunity to file a supplemental brief, which it did on November 6, 2013. Having considered the papers submitted, the Court now GRANTS Plaintiffs' motion for the reasons set forth below.[1]

**BACKGROUND**

Plaintiffs and the proposed collective action members are bus drivers for Defendant SFO Shuttle Bus Company ("SFO Shuttle"). SFO Shuttle provides transportation services in the San Francisco Bay Area through three divisions: (1) the corporate commuter division which operates routes from the San Francisco Bay Area to Silicon Valley

---

[1] The Court did not rely on any of the evidence objected to by SFO Shuttle and therefore does not rule on SFO Shuttle's objections to Plaintiffs' evidence.

1

companies (*e.g.*, the Google employee shuttle); (2) the hotel division which operates routes between area hotels and San Francisco International Airport; and (3) the airport division which provides services within San Francisco and Oakland International Airports.

Plaintiffs claim that SFO Shuttle violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by requiring its bus drivers to work without pay, and, where applicable, without overtime pay, when performing the following duties:

(1) *Inspections.* Drivers are required to inspect buses after each trip to ensure there are no passengers remaining, and also to look for any damage, spills, or property left behind. From time to time, drivers must also take buses to be cleaned and to undergo mechanical inspections.

(2) *Meetings.* SFO Shuttle holds meetings to discuss drivers' job duties. These meetings last approximately fifteen minutes.

(3) *Split-Shift Waiting.* Drivers may be scheduled to work "split shifts" meaning they drive two routes in one day, but with a break in between. For example, a driver may drive a morning commute route from San Francisco to Google. The driver then waits a certain period of time, before driving from Google back to San Francisco for the evening commute. By Plaintiffs' allegation, during this wait time, drivers do not have access to their personal cars, which are left at their original start points. As a result, drivers must remain at an SFO Shuttle location for the duration of their waiting time. Additionally, SFO Shuttle expects drivers to be available to perform various additional tasks and assignments during this waiting time. SFO Shuttle does not pay its drivers for the wait time.

(4) *Medical Certification.* SFO Shuttle requires bus drivers to take a medical examination, but does not pay for the time required to undergo the medical examination.

(5)   *Licensing.*  SFO Shuttle does not pay drivers for the time they spend going to the Department of Motor Vehicles to renew the commercial driver's licenses required for their jobs.

The FLSA authorizes workers to sue for unpaid wages and overtime wages on behalf of themselves and all "other employees similarly situated," in a form known as a collective action.  29 U.S.C. § 216(b).  Unlike class actions, collective actions are "opt in" actions, meaning individuals must register their consent to join the class in order to become class members.  In *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), the Supreme Court held that, "in appropriate cases," courts should exercise their discretion to authorize notice of a collective action to similarly situated potential plaintiffs.

Plaintiffs here move for *Hoffmann- La Roche* notice of an FLSA collective action and request that the Court authorize the posting of a notice of the action at SFO Shuttle's locations, as well as the transmission of mail and e-mail notice of the action to prospective collective action members, defined as: "all individuals who are currently employed, or have formerly been employed, by SFO Shuttle Bus Company and all subsidiaries, joint ventures, partnerships and affiliates . . . as a bus operator or in an equivalent position on or after January 18, 2010."[2]  Pl. Mot. at 1.  Plaintiffs estimate there are approximately one hundred prospective class members, of whom, more than twenty have already opted in by filing consent forms.

**LEGAL STANDARD**

Under the FLSA, a Plaintiff may maintain a collective action on behalf of persons "similarly situated."  29 U.S.C. § 216(b).  The statute, however, does not define "similarly situated," and neither has the Ninth Circuit.  *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (Wilken, *J.*) (noting that the Tenth Circuit commented on the dearth of circuit case law defining "similarly situated" in *Thiessen v. General Electric*

---

[2] The proposed class includes drivers from all three divisions of SFO Shuttle's operations: commuter, hotel, and airport.

3

1  *Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).  Within this Circuit, most district
2  courts have adopted a two-stage approach to determining whether plaintiffs are similarly
3  situated and thereby whether the action may proceed as a collective action.  *See Lewis*, 669
4  F. Supp. 2d at 1127; *Ramirez v. Ghilotti Bros. Inc.*, No. 12-4590, 2013 WL 1786636, at
5  *2-*3 (N.D. Cal. Apr. 25, 2013); *Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105,
6  1115 (C.D. Cal. 2011).

At the first stage, sometimes called the notice stage, the court is to make an initial, conditional determination of whether plaintiffs are similarly situated "for the purpose of sending notice to potential class members." *Lewis*, 669 F. Supp. 2d at 1127.  For conditional certification, the court requires "little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Id*. (internal quotation marks omitted).  The determination relies on a "lenient [standard] that typically results in certification." *Wynn v. National Broadcasting Company, Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002).

The second stage occurs after the close of discovery, often on a motion for decertification by the defendant.  *Lewis*, 669 F. Supp. 2d at 1127.  At the second stage, the court adopts a stricter standard for "similarly situated" and considers factors such as the "disparate employment settings of the individual plaintiffs;" defendant's various defenses which are individual to each plaintiff; and "fairness and procedural considerations." *Id.* (citing *Thiessen*, 267 F.3d at 1102-03).

**DISCUSSION**

**I.      Conditional Certification**

As an initial matter, SFO Shuttle argues that Plaintiffs' motion should be evaluated on a more stringent standard than the typical first-stage conditional certification because Plaintiffs have "had ample time to conduct class discovery including propounding 85 document requests." Def. Opp. Br. at 9.  While courts may occasionally apply a

1  heightened standard or skip to the second-stage of certification review, courts in this
2  Circuit plainly "refuse to depart from the notice stage analysis prior to the close of
3  discovery." *See Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629 (E.D. Cal.
4  2009) (collecting cases).  Here, although some discovery has occurred, Plaintiffs have not
5  taken any depositions.  To apply a heightened standard of review now would thus
6  undermine the two-stage process and would prejudice Plaintiffs who have not had an
7  opportunity to conduct sufficient discovery.  *Cf. Lewis*, 669 F. Supp. 2d at 1127 (declining
8  to deviate from traditional first-stage analysis even where significant discovery had
9  occurred involving volumes of documents and several depositions).  Once discovery is
10 complete, SFO Shuttle may move for decertification where the more stringent, second-
11 stage standard will apply.
12     For purposes of the first-stage review before the Court, certification is appropriate
13 based on "nothing more than substantial allegations that the putative class members were
14 together the victims of a single decision, policy, or plan." *Theissen*, 267 F.3d at 1102
15 (internal quotation marks and citations omitted).  Plaintiffs allege that the putative class all
16 performed the same duty as bus drivers, and they were all victims of SFO Shuttle's
17 practice of not paying them for time worked.
18     SFO Shuttle opposes certification on several grounds primarily relating to the
19 merits of Plaintiffs' claims.  First, SFO Shuttle contends that the class should not be
20 certified because Plaintiffs fail to establish that it violated the law.  For example, although
21 Plaintiffs submitted declarations from drivers stating that they could not attend to personal
22 matters during waiting time, were forced to stay onsite, and therefore should have been
23 paid for that time, SFO Shuttle characterizes the time spent differently and reasons that it
24 should not be compensable.  SFO Shuttle also argues that deposition testimony contradicts
25 Plaintiffs' claims as the deponent plaintiffs admit that they were occasionally paid for
26 inspection time, and were sometimes permitted to spend waiting time attending to personal
27 errands.  At this stage, with discovery still incomplete, the Court declines to engage in the
28 parties' factual disputes.  *Cf. Lewis*, 669 F. Supp. 2d at 1128 (declining to consider

1 defendant's declarations, finding that plaintiffs had met their burden, and defendant could
2 resubmit its declarations at second-stage decertification). "It may be true that the evidence
3 will later negate [P]laintiffs' claims, but this order will not deny conditional certification at
4 this stage in the proceedings." *Escobar v. Whiteside Const. Corp.*, No. 08-1120, 2008 WL
5 3915715, at *4 (N.D. Cal. Aug. 21, 2008).

6 In addition to its arguments on the merits, SFO Shuttle also disputes Plaintiffs'
7 showing that the class members are similarly situated. Specifically, SFO Shuttle claims
8 that because Plaintiffs' declarations are all from drivers in the commuter division,
9 particularly from Google employee shuttle drivers, that there is no evidence that all non-
10 Google drivers were subject to the same policies. Again, because discovery is not yet
11 complete, the Court will not infer anything from the absence of declarations from drivers
12 in other divisions and groups. Moreover, although the proposed class of drivers worked in
13 different divisions and for different clients of SFO Shuttle, and varied in their routes,
14 locations, and supervisors, there is no evidence that each group or division is subject to
15 such de-centralized decisionmaking about pay practices that collective adjudication on pay
16 issues is impossible. *See Wong v. HSBC Mortgage Corp. (USA)*, No. 07-2446 MMC, 2008
17 WL 753889, at *3 (N.D. Cal. Mar. 19, 2008) (granting conditional certification of class
18 comprised of employees with various job titles, finding that the differences represented by
19 those titles did not make the employees any less "similarly situated" for purposes of their
20 FLSA claim).

21 As Plaintiffs' burden at this stage is light, they have met their burden by alleging
22 that all drivers are subject to SFO Shuttle's policy of non-payment for certain categories of
23 work and supporting those allegations with declarations, albeit from a limited sample of
24 the prospective class. Further discovery may reveal contrary facts, at which point SFO
25 Shuttle could move for decertification. If applicable, the Court may also then consider the
26 division of the class into subclasses.

## II. Proposed Notice

Plaintiffs request that the Court order SFO Shuttle to produce the names, addresses, e-mail addresses, and telephone numbers of prospective collective action members within ten days of this order. Upon receipt of that information, Plaintiffs seek permission to mail and e-mail notice of the action to prospective class members, and to post a notice at each of SFO Shuttle's locations. From the date of sending and posting the notice, prospective plaintiffs would have ninety days to provide their written consent to joining the action.

SFO Shuttle challenges Plaintiffs' proposed notice, Exhibit A to Plaintiffs' Proposed Order, at Docket No. 28, and request that the parties meet and confer on the form and method of notice. As SFO Shuttle has had ample opportunity to raise its objections to the Plaintiffs' proposed notice, the Court sees no reason to require the parties to meet and confer regarding the same disputes already now before the Court. SFO Shuttle challenges only two elements of Plaintiffs' notice.

First, it argues that Plaintiffs' proposed notice is flawed because its use of the Court caption implies the Court's endorsement. "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche*, 493 U.S. at 174. The Court finds that use of the caption does not give a false impression of endorsement; rather it indicates the importance of the notice and may distinguish it from junk mail. Also, in the event of any possible misinterpretation, the notice contains a clear statement that: "The Court has taken no position in this case regarding the merits of Plaintiffs' claims or Defendant's defenses." Proposed Order, Ex. A, Dkt. No. 28,

Second, SFO Shuttle claims that Plaintiffs' counsel should be prohibited from contacting class members, and notice should instead distributed by a third-party claims administrator. Although some courts have required such methods, others have found notice by plaintiff's counsel to be sufficient. *See Lewis,* 669 F. Supp. 2d at 1128 (requiring notice by third-party claims administrator); *Escobar*, 2008 WL 3915715, at *6 (denying

1  plaintiff's request for third-party claims administrator and requiring plaintiff's counsel to
2  provide notice).  As SFO Shuttle fails to offer any reason to require a third-party
3  administrator, appointment of an administrator seems an unnecessary expenditure at this
4  stage.  Plaintiffs' counsel will be responsible for disseminating notice.

### III.  Equitable Tolling

Under the FLSA, the three-year statute of limitations continues to run until a valid consent to join a suit is filed.  29 U.S.C. § 256(b); *Partlow v. Jewish Orphans' Home of Southern California, Inc.*, 645 F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-La Roche Inc*, 493 U.S. 165.  Plaintiffs request that the court toll the statute of limitations as of the date of the original complaint, January 18, 2013, or in the alternative, as of the date Plaintiffs' counsel first requested class member contact information, March 11, 2013.  They argue that tolling is necessary to preserve the claims of similarly situated persons who were unable to opt-in as they lacked notice of the suit.

The FLSA statute makes plain that the three-year state of limitations is to run until "the date when the complaint is filed, [for an individual who] is specifically named as a party plaintiff" or for those not so named, "the subsequent date on which such written consent is filed in the court in which the action was commenced."  29 U.S.C. § 256(b).  That there may be a difference between the date when a complaint is filed and the date a plaintiff consents to join a suit is specifically contemplated in the statute and is therefore not sufficient to justify equitable tolling to preserve any claims that may lapse during that period.  The Court therefore declines to equitably toll the statute of limitations at this stage.  *Cf. Lewis*, 669 F. Supp. 2d at 1129 (declining to equitably toll statute of limitations were plaintiffs similarly requested it on the basis that defendants' counsel had earlier denied them class contact information).  Nevertheless, the Court permits distribution of the notice to prospective class members employed in the three years prior to the date of the complaint, in the event that any individuals may have specific circumstances that warrant equitable tolling.  As the proposed class is estimated as including one hundred people,

8

twenty of whom have already opted in, the cost of any additional mailing and e-mailing is minimal.

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiffs' motion for approval of *Hoffmann-La Roche* notice. The Court conditionally certifies the class of those who are currently employed, or have formerly been employed, by SFO Shuttle as a bus operator or in an equivalent position at any time within the three years prior to the filing of this action. Within ten days of the date of this order, SFO Shuttle shall produce to Plaintiffs' counsel a Microsoft Excel file containing the names, mailing addresses, e-mail addresses and phone numbers of all prospective members of the class. The Court approves of the proposed notice located at Exhibit A to Plaintiffs' Proposed Order at Docket No. 28. Notice will proceed as detailed in this order. The Court will not equitably toll the limitations period at this stage.

**IT IS SO ORDERED.**

Dated: 11/21/13                     _____
                                    THELTON E. HENDERSON, JUDGE
                                    UNITED STATES DISTRICT COURT

9